Frederick Buck, Appellee, *vs.* Henry Garber *et al.*
Appellants.

*Opinion filed December 17, 1913—Rehearing denied Feb. 5, 1914.*

1. Deeds—*what constitutes a good delivery.* Where the grantee is present at the time of the execution of a deed to him reserving a life estate in the grantors, has come to the office of the scrivener for the purpose of the execution of the deed, and knows that the deed was left with the scrivener by the grantors to be filed for record, such facts, together with the recording of the deed, constitute a good delivery.

2. Same—*reservation of life estate creates a presumption that immediate delivery was intended.* The reservation of a life estate to the grantors creates a presumption that the deed was intended as an immediate conveyance of a future estate, and the retention of the deed by the grantor is not inconsistent with its delivery at the time of its execution.

3. Same—*when deed cannot be deemed to convey a fee simple.* Section 9 of the Conveyances act, providing that a deed in the form therein prescribed shall be deemed a conveyance in fee simple, must be construed with section 13 of the same act, and hence if words theretofore necessary to transfer an estate of inheritance are not used and a less estate is limited by express words or appears to have been granted by operation of law, the deed is not deemed a conveyance of a fee simple estate. (*Bauman* v. *Stoller,* 235 Ill. 480, followed; *Palmer* v. *Cook,* 159 id. 300, overruled.)

4. Same—*words following the description of land in statutory form of warranty deed may limit estate.* Words inserted after the description of land in a statutory form of warranty deed may limit the estate granted to less than a fee simple estate.

5. Same—*terms of deed must control unless evidence is clear that it states the agreement incorrectly.* While a court of equity has jurisdiction to reform a deed upon the ground of a mistake, yet the presumption is in favor of the written contract, and its terms must control unless the proof is clear and convincing that the deed states the agreement of the parties incorrectly.

6. Same—*when parties have no right to have deed corrected.* Where a grantee accepts a voluntary conveyance reserving a life estate in the grantors and providing that if the grantee dies leaving a wife and children they "shall inherit the whole land as the law directs," the grantee has no right, as against his children who were then unborn, to have the deed corrected by striking out the clause concerning his children, and their rights are not affected

by his making a quit-claim deed of the land to the grantor in the
first deed; nor does the latter acquire any right to have the first
deed corrected, where he knew of its language at the time the
quit-claim deed was made.

7. SAME—*what does not amount to a testamentary disposition
of property.* The fact that a deed conveying a life estate with
contingent remainders uses the words "inherit" and "descend" with
respect to the manner in which the title shall pass in case of the
happening of the different events mentioned, does not show that
the disposition of the property is testamentary in character.

APPEAL from the Circuit Court of Shelby county; the
Hon. J. C. McBRIDE, Judge, presiding.

J. H. FORNOFF, and L. G. GRIFFITH, for appellants.

CHAFEE & CHEW, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of
Shelby county for the reformation of a deed.

Ferdinand Garber died in 1868, intestate, leaving a
widow, Emma Garber, and his children, Henry, two years
old, and Fred, then unborn, his heirs. He was the owner
of one hundred acres of land, eighty acres having on it a
small house in which he lived with his family, and twenty
acres of timber land two miles south-east. His personal
property was sufficient to pay his debts and $558.72 re-
mained for distribution to his widow and children. Two
years after his death the appellee, Frederick Buck, married
the widow, and thereafter resided with her and her chil-
dren upon this land. Henry Garber was of age on March
5, 1887, and on March 16, by warranty deed, he conveyed
his undivided half of the one hundred acres which had be-
longed to his father to the appellee, who conveyed to him
forty acres of other land, which in the following September
Henry deeded back. Fred Garber died on August 11, 1888,
unmarried and a minor, and on August 20 Henry Garber

and his mother conveyed to the appellee the interest which they inherited from Fred in the one hundred acres. On August 15, 1888, the deed in controversy in this case was executed by the appellee and his wife to Henry Garber. This deed was drawn by a man named Southwick, in the statutory form, and after the description of the land contained the following language, all of which the bill seeks to cancel except the first clause, which reserves to the grantors a life estate: "Said grantors to have and hold possession and use of said land during their natural lives and at their death the said Henry Garber to inherit and have full possession. If the said Henry Garber dies and leaves no widow nor children, the land hereby conveyed shall descend to the legal heirs of Frederick Buck. If said Henry Garber dies leaving widow and no children, one-half of said land shall descend to his lawful wife and the other half to the lawful heirs of Frederick Buck. If said Henry Garber dies leaving a wife and child or children, said wife and children shall inherit the whole land as the law directs."

The amended bill was filed on June 14, 1912, and alleges that for the purpose of executing this deed the appellee and his wife went to the office of J. E. Southwick, in Pana, and told him to prepare a deed from them to Garber, with a reservation for the use of the said land during the life of the grantors; that neither of them could read writing and they depended entirely upon the scrivener to prepare the deed, as they had directed; that Southwick, in preparing the deed, without the appellee's request or knowledge inserted all of the language above mentioned following the words "said grantors to have and hold possession and use of said land during their natural lives;" that the appellee and his wife signed the deed and had it placed on record and it was afterwards returned to the appellee, and he has since retained possession of it and never delivered it to Garber or anyone for him; that about seven years after the execution of this deed, Garber, who was still un-

married, employed an attorney to settle his affairs with the appellee and his mother, and for the purpose of settling all matters of difference between them it was agreed that the appellee and his wife would convey to Garber eighty acres of land adjoining the land described in the said deed, and they did so, and Garber took possession of and has since occupied the land so conveyed to him; that the appellee was advised that the deed made by Southwick having been placed on record he should have a quit-claim deed from Garber, and it was part of the settlement that these two eighty-acre tracts were simply exchanged so that Garber could have immediate possession of the lands deeded to him; that the appellee was not aware, and did not learn for many years thereafter, that there was any question about his title to the land described in the quit-claim deed from Garber; that in the fall of 1910 he first learned that the deed described in the bill as the Southwick deed was a cloud upon his title. The bill avers that the deed was never delivered, that there was no consideration for it, and that all matters between Garber and the appellee and his wife were subsequently fully settled. The prayer was for the removal of the cloud upon the appellee's title.

The exchange of deeds mentioned in the bill was made in 1895. At that time Henry Garber had never been married but had lived with his mother and step-father. In 1897 he was married and when the suit was begun he had seven children. These, with his wife as well as himself, were made parties to the bill. He filed a disclaimer. A guardian *ad litem* was appointed for the children and answered for them, and his wife filed an answer denying the appellee's right to the relief prayed for. On a hearing the court rendered a decree as prayed for, and the defendants appeal.

The appellee insists upon three contentions in support of the decree: First, that the deed was never delivered; second, that the language complained of was inserted in

the deed by the scrivener of his own motion, and the deed was executed containing this language through the mutual mistake of the parties; and third, that the language itself is void in law as to any effect upon the meaning of the deed.

As to the first proposition the court found that the deed was delivered, and could not have found otherwise.. There was no occasion for the making of the deed if it was not to be delivered at once. The original bill did not allege that the deed had not been delivered but did aver that by it the appellee conveyed the land to Henry Garber. The recording of the deed was *prima facie* evidence of its delivery. (*Schroeder* v. *Smith,* 249 Ill. 574; *Spencer* v. *Razor,* 251 id. 278.) No evidence was introduced rebutting this *prima facie* proof. The grantee was present at the time of the execution of the deed, had come to the office of the scrivener for the purpose of its execution, and knew that the deed was left with the scrivener by the grantors to be filed for record. These acts constituted a good delivery of the deed. (*Valter* v. *Blavka,* 195 Ill. 610.) The reservation of the life estate to the grantors creates a presumption that it was intended the deed should take effect immediately as a conveyance of the future estate, for otherwise there would be no reason for such reservation. (*Baker* v. *Hall,* 214 Ill. 364; *Riegel* v. *Riegel,* 243 id. 626; *Prince* v. *Prince,* 258 id. 304.) The retention of the deed by the grantor is not inconsistent with its delivery at the time of execution when a life estate in the property conveyed is reserved to the grantor. *Valter* v. *Blavka, supra; Hill* v. *Kreiger,* 250 Ill. 408.

The third proposition, that the language claimed to have been improperly inserted in the deed is of no effect in law, is based upon the rule that the granting clause in a deed will prevail over subsequent clauses which would have the effect to abridge the estate conveyed; that where the granting clause conveys a fee, the *habendum* or other subsequent clause cannot divest the estate or cut it down to anything

less. The rule was recognized in *Riggin* v. *Love, 72* Ill. 553, and *Welch* v. *Welch,* 183 id. 237; but it has no application here. The deed from the appellee to Garber was in the statutory form, stating that the grantors convey and warrant to the grantee the premises described, the description being followed by the words hereinbefore set out in full.

It is argued that by virtue of section 9 of chapter 30 of the Revised Statutes the words "convey and warrant" were sufficient to convey an estate in fee simple without any words of inheritance, and that the added clauses merely attempted, in violation of the rule just stated, to divest or limit the estate thus granted. This argument overlooks the effect of section 13 of the same chapter, which provides that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." We have held that section 9 must be construed in connection with section 13, and if words heretofore necessary to transfer an estate of inheritance have not been used and if a less estate be limited by express words or appears to have been granted by operation of law, the conveyance shall not be deemed to convey a fee simple. (*Cover* v. *James,* 217 Ill. 309.) We are referred to the case of *Palmer* v. *Cook,* 159 Ill. 300, which sustains appellee's contention, but the question was discussed in *Cover* v. *James, supra,* and a different conclusion was reached. The whole subject was again considered in *Bauman* v. *Stoller,* 235 Ill. 480, and it was stated that *Palmer* v. *Cook* was in conflict with *Cover* v. *James,* and that the latter case stated the correct doctrine and should be followed. The doctrine as stated in *Bauman* v. *Stoller, supra,* is, that every word used in a conveyance, no matter in what part found, should

be given weight in construing the instrument where words necessary at common law to transfer an estate of inheritance have not been used, and that the doctrine by virtue of which subsequent words in a deed which apparently reduce the estate conveyed by the words of grant should be disregarded as repugnant to the grant has no application when the words of grant are not such as would at common law convey an estate of inheritance.

It is argued that if the language complained of is not inoperative in law it amounts to a testamentary disposition of the property, and is therefore void. The instrument in question was not executed in conformity with the requirements of the Statute of Wills, but must take effect, if at all, as a deed of present conveyance. It purports, on its face, to be such a deed, and there is no reason, in law, why a conveyance to Henry Garber for life, with remainder (if he dies leaving no wife or child surviving him) to the heirs of Frederick Buck, or if he leaves a widow and no child, one-half to his widow and the other half to the heirs of Frederick Buck, or if he leaves both a widow and a child or children, to the widow and child or children, is not valid. It is true that the words "inherit" and "descend" are not appropriate to a conveyance by deed, but they are no more appropriate to a devise. The transfer of title either by deed or will is a purchase, while the words "inherit" and "descend" refer strictly to a transfer of title by operation of law. While the words are not accurately used, they clearly enough express the grantor's intention as to the manner in which the title shall pass in the different events mentioned. The instrument was a present conveyance of a life estate to Henry Garber, with contingent remainders to his widow, (if he should marry and leave a widow,) to his unborn children and to the heirs of Frederick Buck.

The appellee insists that the evidence shows clearly and convincingly that the scrivener inserted the language ob-

jected to in the deed without any authority or direction to do so and that the deed was executed without any knowledge that it contained these objectionable provisions. The only persons present besides Southwick were the appellee, his wife and Henry Garber. Southwick was not a witness. The appellee and his wife were Germans and could not read writing. Henry had been very hard of hearing from his birth, and though he had gone to school some, this infirmity interfered with his learning and he was ignorant and had no knowledge of business. The evidence does not disclose that any negotiations between the appellee and his wife and Henry preceded the making of the deed or that there was any agreement or understanding in regard to it. Before the deed was made the appellee's wife wanted to give the land to Henry, and she talked the matter over with him and told him he could have it if he would wait until she and her husband were dead. He said all right—he would be glad to get it—and there was no other agreement about it. The whole thing was voluntary on the part of the appellee and his wife. The three went to Southwick together, and the appellee and his wife testify that the appellee told Southwick he wanted to turn this piece of land over to Henry and wanted Southwick to fix it so that Henry could not get it until after his mother and the appellee were dead. Nothing was said about putting any other provisions in the deed. After the deed was written Southwick said to Henry he could not claim the land until after his step-father and mother were dead, and Henry told him he did not want it any sooner and he hoped they would live forever. Southwick did not read the deed over to them but they signed it and left it with Southwick to be recorded. Garber testified that his mother and step-father took him to Pana to a man whom he thinks they called Southwick; that they wrote something and signed it and Southwick read it to him; that he read about it going here and there,—about this one dying it went there and after that one died it went some-

where else; that he said something about children,—wife and children; that it went to his wife and children after he died; that witness did not tell Southwick anything.

A court of equity has jurisdiction to reform a deed on the ground of mistake, but the proof which will justify the substitution of parol evidence of a contract different from that evidenced by the written agreement of the parties must be clear, satisfactory and convincing. The presumption is in favor of the written contract, and its terms must control unless it is clearly and satisfactorily shown that the instrument states the agreement incorrectly. (See *Kuchenbeiser* v. *Beckert,* 41 Ill. 172; *Schwass* v. *Hershey,* 125 id. 653; *Kelly* v. *Galbraith,* 186 id. 593.) It is not clearly and satisfactorily shown that there was any mistake in the execution of the deed in the form in which it was executed. Southwick, who wrote it, so far as appears had no interest in the matter other than to write the deed as he was told to. It seems unlikely that when he was told to write a deed merely reserving the use of the land to the grantors for life, he should in apt words showing his ability to understand and state accurately what was desired, insert the reservation in the deed, and then, without direction from anyone and without motive, insert a series of qualifications of the estate directly contrary to his directions. These qualifications were in the interest of appellee at that time, for in certain contingencies they would bring back the estate, or part of it, to him or his heirs. The grantee was only twenty-two years old, ignorant and partially deaf. He was under the influence of his mother and step-father. He was accepting what they saw fit to give him and they might have imposed any terms they chose. He says the deed was read, and while he does not give the terms of it, his account corresponds with the instrument itself. If any one was injured by these terms it was Garber. The appellee could not, after making this deed in 1888, have maintained a bill to correct it by striking out the words now

sought to be stricken out. If Garber was satisfied no other person could complain. For seven years Garber held the title as it was, and when he did complain it was not because any mistake had been made in the deed, but because he thought he ought to have some land of which he could get possession. When the deed was made by Garber to the appellee, in 1895, the appellee succeeded only to Garber's rights. Garber did not then or at any time claim any greater interest in the land than his deed showed him to have. He had accepted the deed as it was written, and he had no right, as against his children, who were then not in existence, to have the deed corrected. The appellee acquired no such rights. When the appellee took the deed from Garber, in 1895, he then knew the contents of the deed to Garber. Humphrey, Garber's lawyer, went to the appellee with a copy of the deed and talked with him about the provisions now complained of. Aughinbaugh, the justice of the peace who drew the quit-claim deed which Garber executed to the appellee in 1895, testified that the appellee brought him the appellee's deed to Garber, and he discussed the clause now in controversy with him at the time of preparing the deed and told him the deed was not good and advised him not to take it. But neither to Humphrey nor to Aughinbaugh did the appellee claim that there had been any mistake in the deed, and nothing was heard of such a claim until 1910, when the coal company which was seeking to buy the coal under the land found the title defective. A consideration of all the evidence leads to the conclusion that it does not clearly and satisfactorily show that the deed was not drawn in accordance with the intention of the parties at the time.

The decree is reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*