GWINN ET UX. v. HOBBS ET AL.

[No. 11,613. Filed December 14, 1923. Rehearing denied April 14, 1924. Transfer denied June 10, 1925.]

1. APPEAL.—*Long pendency of action and three verdicts for same party not alone sufficient reason for refusing to award a new trial.*—The fact that a case has been in the courts for ten years and that, in three trials thereof, the verdict was in favor of the same party is not sufficient reason for refusing to award the other party a new trial if substantial prejudicial error is presented. p. 269.

2. APPEAL.—*Questions reserved for review on appeal must be presented on first appeal after judgment, as all those not then expressly affirmed or reversed will be deemed affirmed.*—All questions reserved for review by an appellate court must be presented on the first appeal after final judgment or not at all; for thereafter, all questions presented by the record will be considered as finally determined by the judgment, and all such questions not expressly affirmed or reversed will be deemed affirmed. p. 270.

3. WITNESSES.—*Non-expert witnesses competent to give opinion as to sanity of grantor, after stating their acquaintance, social and business relations and their observations at such times.*—Non-expert witnesses who have testified as to business dealings with the grantor and their observations of her manner and conduct on occasions not remote from date of deed were competent to give an opinion as to her sanity or insanity at the date of the deed, and the exclusion of such evidence would be prejudicial error. p. 274.

4. WITNESSES.—*Non-expert witnesses competent to testify that they never noticed anything strange or unusual in the manner of one whose sanity is questioned and as to whether they ever noticed any incoherency in speech.*—Non-expert witnesses are competent to state whether they ever noticed anything strange or unusual in the demeanor of a grantor whose soundness of mind is in question and whether they ever noticed any incoherency in her speech or peculiarity in her manner. p. 274.

5. EVIDENCE.—*When question of sanity is involved, evidence may be given as to incoherency of speech, peculiarity of manner or conduct, or unusual demeanor of the person inquired about.*—In an action involving the soundness of mind of a grantor at the time of executing a deed, witnesses who were acquainted with the grantor should be allowed to answer whether they ever noticed any incoherency in speech, peculiar-

ity of manner or conduct, or anything unusual in the demeanor of such grantor, as questions of this kind merely call for facts observed.    p. 275.

6.   WITNESSES.—*Witness examined out of court and his examination read at trial makes him competent for all purposes.*— The examination of a witness out of court and the introduction of the examination in evidence at the trial makes him a competent witness for all purposes.    p. 277.

7.   APPEAL.—*Rule of "law of the case" does not control as to facts found in former trial.*—It is the law of a case enunciated on an appeal that is conclusive in subsequent trials and not the findings of fact by the court or jury, and the finding of facts by a jury in the first trial does not bind a jury at a subsequent trial.    p. 277.

8.   EVIDENCE.—*Evidence as to performance of consideration for deed to grantees was admissible where their theory was that there could be no rescission until they were placed in statu quo.*—In the trial of an action involving the validity of a deed and a contemporaneous contract for the support of grantor, where there was an issue as to whether the grantees had performed the services required of them constituting the consideration for the deed and whether the grantor was of sound mind, and, if not, whether the grantees had knowledge of such unsoundness, the latter were entitled to introduce evidence showing their performance of the contract, on the theory that, there being no evidence of undue influence, there could be no rescission of the deed and contract until they were placed in *statu quo,* though, on former appeal, it was held that there was evidence which would have warranted findings adverse to grantees on those issues.    p. 277.

9.   INSANE PERSONS.—*Rule as to setting aside contract with insane person when other party to contract had no knowledge of insanity stated.*—Where contract is made with person of unsound mind, in good faith, without fraud or imposition, for a fair consideration, without notice of and before adjudication of insanity, and the contract has been executed, in whole or in part, it will not be set aside unless the parties can be restored to their original condition.    p. 277.

10.   DEEDS.—*Contemporaneous contract held real consideration for deed and the two instruments should be construed together.* —Where a deed reserving a life estate and contract between grantor and grantee are executed at the same time, the latter being in the form of a lease for the lands conveyed, and stipulating for the payment of a yearly rental and furnishing a home and board for the grantor, the two instruments will be construed together and the contract as constituting the consideration for the deed.    p. 279.

11.  CANCELLATION OF INSTRUMENTS.—*Deed cannot be canceled because of unsoundness of mind of grantor till grantees placed in statu quo where they had no knowledge of unsoundness of mind.*—Where an elderly widow executed a deed conveying her home farm to a husband and wife, reserving a life estate, and contemporaneously executed to them a lease of the farm stipulating for a yearly rental and that grantor should have a home with them and her board free during the existence of the lease, and the grantees performed the conditions of the deed and contract until the grantor's death, the deed could not be canceled because of the unsoundness of mind of the grantor at the time of executing the deed until compensation for the grantees' services had been made or offered, in the absence of evidence of undue influence or of knowledge by the grantees that grantor was of unsound mind.  p. 280.

12.  CANCELLATION OF INSTRUMENTS.—*Contract to furnish "home" for elderly widow as part consideration for deed for grantor's home farm held to include care of grantor during sickness, for which grantees must be compensated before deed can be rescinded.*—Where an elderly widow executed a deed conveying her home farm to a man and his wife, reserving an estate for her life, and, at the same time, executed a lease thereof to the grantees, containing a stipulation that they were to furnish the grantor a "home" free during the existence of the lease and the grantees performed the conditions of the deed and contract until her death, eleven years thereafter, the word "home" therein included not only a place of abode and shelter but the care which one member of a family gives to another, during sickness as well as in health, and before the deed could be rescinded, compensation for the services of both the grantees in ministering to her necessities, caring for her in sickness, and making her comfortable in her declining years must be paid or tendered, and, in an action to cancel said deed, they were entitled to show the character and value of the services rendered and as to whether any offer had been made to compensate them therefor.  p. 281.

13.  QUIETING TITLE.—*Instruction as to mental capacity required to make an advancement held not erroneous.*—In an action to quiet title as against a deed because of grantor's unsoundness of mind, where the defendants claimed title under said deed and a contemporaneous contract to furnish the grantor a home and proper care during life, an instruction as to the mental capacity required to make an advancement to an expectant heir was not faulty because of failure to advise the jury that it must first find that the grantor, by the deed and contract, intended to make an advancement to the defendants, since the intention of the grantor must have been

determined by the construction of the contract and such construction was for the court and not the jury.    p. 283.

14.    QUIETING TITLE.—*Failure to instruct as to requirement of placing, grantees in statu quo in action to quiet title against deed because of grantor's unsoundness of mind, held error.*— In an action to quiet title against a deed because of the grantor's unsoundness of mind, where there was no evidence of undue influence or that grantees therein had any knowledge of such disability, and claimed title under the deed and a contemporaneous contract to furnish the grantor a home and proper care during life, which had been done, it was error to refuse to give an instruction that the deed could not be avoided until there was an offer to place such grantees in *statu quo.*    p. 283.

15.    QUIETING TITLE.—*Instruction as to grantor's mental capacity to make lease contract held error in view of theory of trial.* —In an action to quiet title against a deed because of the grantor's unsoundness of mind, it was error to give an instruction as to the mental capacity requisite to make a contemporaneous lease contract for the land conveyed by the deed when the case was not tried on the theory that the deed and lease were to be construed together and the instruction was not limited to matters shown by the evidence.    p. 284.

16.    QUIETING TITLE.—*Instruction as to discrimination between grantor's "natural objects of bounty" without definition thereof held error.*—In an action to quiet title against a deed because of the grantor's unsoundness of mind, it was error to give an instruction to the effect that if the deed would give the grantees therein a much larger share by way of advancements than other persons who were the natural objects of the grantor's bounty, such discrimination could be considered as corroborating plaintiff's claim that grantor was of unsound mind, as "natural objects of bounty" should have been defined, and the jury should have been told only that it might consider the fact in connection with other evidence in determining the question of sanity.    p. 285.

17.    TRIAL.—*Tender of instruction on issue after refusal to give peremptory instruction withdrawing issue not waiver of objection to instruction thereon.*—In an action to quiet title against a deed because of grantor's unsoundness of mind and undue influence of the grantees, where the court refused to give a peremptory instruction withdrawing issue of undue influence because of absence of any evidence to that effect, objections to instructions on the subject of undue influence were not waived by thereafter tendering instructions on that subject.    p. 286.

18.    TRIAL.—*Instruction submitting issue to the jury on which there was no evidence erroneous.*—In an action to quiet title

against a deed because of grantor's unsoundness of mind and undue influence of the grantees, it was error to give instructions submitting the issue of undue influence to the jury when there was no evidence of any undue influence.   p. 286.

19.   DEEDS.—*Reserving life estate in grantor creates presumption that deed takes effect immediately.*—Where a deed reserves a life estate to the grantor, there is a presumption that it was intended to take effect immediately.   p. 287.

20.   DEEDS.—*Certificate of acknowledgment of deed in proper form prima facie proof of delivery.*—A certificate of acknowledgment of a deed in proper form makes a *prima facie* case in favor of the execution of the instrument, including the delivery thereof.   p. 287.

21.   DEEDS.—*Delivery of deed in question shown by sufficient evidence.*—In an action to quiet title against a deed, defendant's uncontroverted testimony that deed was delivered to him, together with the acknowledgment thereof, was sufficient to show delivery.   p. 287.

From Clinton Circuit Court; *Earl B. Stroup,* Judge.

Action by Anna Hobbs and others against James M. Gwinn and another.   From a judgment for plaintiffs, the defendants appeal.   *Reversed.*   By the court in banc.

*Joseph Roberts, Floyd Christian, Harry C. Sheridan* and *Earl F. Gruber,* for appellants.

*Thomas M. Ryan, Gentry, Cloe & Campbell* and *Shirts & Fertig,* for appellees.

NICHOLS, J.—This is the second appeal of this case, which is an action to quiet title, and involves questions of undue influence and of the soundness of mind of Sarah Kauffman, the grantor in the deed challenged. The opinion in the first appeal is reported in 72 Ind. App. 439, 118 N. E. 155.   The error assigned is the action of the court in overruling appellants' motion for a new trial, which presents the questions hereinafter considered.   By the deed involved, Sarah Kauffman, on August 13, 1901, conveyed to appellant James M. Gwinn a certain farm containing 130 acres of improved land, for an expressed consideration of "one dollar, love and

affection and conditions stated herein," reserving to herself the rents and profits, and possession of said real estate for and during her natural life. Contemporaneous with the execution of said deed, the grantor and the grantee, appellant James M. Gwinn, entered into the following agreement concerning said real estate:

> "This agreement made by and between Sarah Kauffman, first party, and James M. Gwinn, second party. WITNESS, That said first party hereby rents unto said second party, the following described real estate, situated in Hamilton county and State of Indiana, to-wit: * * * for and during her natural life time, at and for two hundred and sixty dollars ($260.00) per year, payable annually. The said first party to have a home and her board free with said second party during said time, said first party to pay all her other expenses, including doctor bills and funeral expenses. The said second party to look after first party's business during said time. The above described real estate having this day been deeded by said first party to said second party, subject to a life estate therein, said second party, or his heirs, if he shall be dead, shall not further share or inherit in said first party's estate. If the said second party shall die before said first party, then this contract shall at the end of the then rental year terminate, without in any way affecting the deed this day made and delivered by said first party to said second party for the above described real estate. The materials and labor for all necessary improvements of the buildings, fences, etc., of said farm to be paid for by the said first party. Witness our hands this 13th day of August, 1921. Sarah Kauffman, J. M. Gwinn."

Appellant Stella is the wife of appellant James M. Gwinn, and he and appellees are the grandchildren of Mrs. Kauffman. The only evidence as to the value of the estate was offered by appellees, by which it appears that the land here involved was worth $100 an acre at the time of the execution of the deed and from $225 to $250 an acre in 1912. The value of Mrs. Kauff-

man's estate, other than the land involved at the time of the execution of the deed does not appear, but, at the time of her death, her personal estate, aside from her household goods, was worth $15,676.38, and forty acres of land which she owned not here involved was worth $50 an acre at the time of the execution of the deed and $75 to $80 an acre in 1912.

Appellees call attention to the fact that this case has been pending for ten years, and that there have been three trials with a verdict at each trial in favor 1. of appellees, and argue that, therefore, a new trial should not be granted. While appellees do not charge the delay to the fault of any one, and we do not undertake to fix the responsibility therefor, we have no hesitation in saying that it is much to be regretted that there should be such delay in the final determination of the action. This, within itself, however, is not a sufficient reason for refusing to grant a new trial if substantial error is presented. Nor is the fact that there have been three verdicts in favor of appellees a sufficient reason for refusing to grant appellants relief unless the controversy presents only questions of fact for consideration. So long as substantial errors of law occurring at the trial are presented, it is our duty to consider them, and to grant a reversal, if appellants have been prejudiced thereby. The cases cited by appellees do not sustain their contention.

In *Savannah R. Co.* v. *Smith* (1890), 86 Ga. 195, 12 S. E. 579, the court says: "The controversy being one of fact only, * * * a fourth trial should be denied."

In *Harrigan* v. *Savannah R. Co.* (1890), 84 Ga. 793, 11 S. E. 965, the court says: "We do not discover any error in law."

In *Van Doren* v. *Wright* (1896), 65 Minn. 80, 67 N. W. 668, 68 N. W. 22, the court says: "It would cer-

tainly be error, after four trials, and four suc-

2.    cessive verdicts in favor of a party, to set aside
the verdict, as being against the evidence, pro-
vided there is sufficient evidence to fairly justify it.
Of course, this rule would not apply, if prejudicial
errors occurred during the trial, which were duly ex-
cepted to, and urged as a ground for a new trial." It
is readily seen that such cases are not out of harmony
with the rule above announced.  We fully recognize
the rule as stated by appellees that all questions re-
served for review by an appellate court must be pre-
sented on the first appeal therefrom after the final
judgment or not at all; for thereafter, all questions
presented by the record will be considered as finally
determined by the judgment, and all such questions not
expressly affirmed or reversed, will, by implication, be
deemed affirmed.  *Stevens* v. *Templeton* (1910), 174
Ind. 129, 91 N. E. 563; *Cleveland, etc., R. Co.* v. *Blind*
(1917), 186 Ind. 628, 117 N. E. 641.  But, of course,
where new questions arise, and such as were not and
could not have been fully determined on the former ap-
peal, such rule is without force.  After an examination
of the record, we conclude that there are questions pre-
sented by this appeal, not heretofore decided, which
demand our consideration.

Appellants complain that the court erred in admit-
ting evidence of the value of the land in controversy at
the time of the death of Mrs. Kauffman, while appel-
lees say that evidence to the same point was admitted
at the former trial, but that the objection was waived
by failure to state any point thereon, and that such
question cannot therefore be presented on this appeal.
Appellants dispute such condition of the record, and
there is nothing in the opinion on the former appeal
that enlightens us in this regard.  We deem the mat-
ter not of enough importance to justify pursuing it fur-

ther, for the admission of such evidence within itself would not be such error as would justify the reversal of the judgment.

Witness James E. Keck, after testifying to his social and business relations and dealings with Mrs. Kauffman, was asked the following question: "Basing your opinion upon the business dealings with her and your other conversations with her, that you have detailed to the jury, your observations of her manner and demeanor and deportment, as you have described it, state whether or not she was a person of sound mind in your opinion in the year 1901, and thereafter, and particularly on the 13th day of August 1901." There were other questions having substantially the same meaning propounded to other witnesses. There was an objection to each of these questions by appellees upon the ground that each asked for an opinion as to Mrs. Kauffman's sanity at some particular time when they had not seen or conversed with her. These objections were each sustained and appellants excepted respectively to the rulings of the court. Appellees say that a non-expert witness cannot give an opinion that a person whom he saw and found to be sane at one time would remain sane until another particular time, more or less remote, and that such question is for the jury. In support of their contention, they cite Page, Wills §390. That section states the rule to be that: "An old acquaintance who has had opportunities for knowing testator's mental condition can testify that he believes that testator was sane; but before a non-expert witness, who is not a subscribing witness, can give his opinion that testator was insane, he must give the facts upon which he bases his opinion, which facts must fairly justify the inference of insanity. But if the witness shows that he has not the means of forming an opinion he will not be allowed to state his opinion. Thus, a witness who

had not communicated with testator for five years out of the last nine years of his life was not allowed to give his opinion as to the testator's sanity during those nine years." We do not see that this section is helpful to appellees' contention. In the instant case, the witnesses who were asked their opinion of the mental condition of Mrs. Kauffman testified that they had known her for many years prior to making the deed in question and up until the time of her death. They had had business dealings and conversations with her; they had visited with her and she had visited with them in their home. Some of them had borrowed money of her and had testified as to her manner of transacting business, these occasions not being remote from the time of execution of the deed. And in answer to the respective questions propounded to them, in substance as above, appellants offered to prove by such witnesses, if they were permitted to answer, that Mrs. Kauffman was of sound mind.

In *Swygart* v. *Willard* (1906), 166 Ind. 25, 76 N. E. 755, appellees had propounded to their witness a question calling for his opinion as to the sanity of the testator, to which appellants objected, for the reason that no facts had been stated by him which tended to prove that the testator was of sound mind *at the time* of making the will and codicil. The witness had testified to an acquaintance with the testator for twenty-five years, to his appearance, walk, manner of conversation, habits, disposition and memory. The court said: "The witness was clearly competent to express an opinion upon those facts as to the mental condition of the deceased. The weight of such opinion depended upon the primary facts given, and was exclusively for the jury. If any material facts are stated at all by the witness tending to show such knowledge and intimacy with the testator as to enable him to form an opinion

of the testator's mental condition, it is the duty of the trial court to permit such opinion to be expressed, and to go to the jury for whatever it may be worth. (Citing authorities.) A contrary rule, requiring the trial court at his peril instantly to determine the effect of such evidence, would subject the court to constant danger of invading the province of the jury and result in many harmful errors; while the holding now approved can rarely, if ever, operate to the prejudice of the rights of either party."

In *Goodwin* v. *State* (1883), 96 Ind. 550, the court states the rule to be that, "The value of an opinion expressed by a non-expert witness depends upon the facts on which it rests, but its competency is not measured by this standard, for an opinion of little value may be competent. If any material facts at all are stated by the witness warranting the inference that he has sufficient knowledge to form an opinion, it is the duty of the court to permit it to go to the jury for whatever it may be worth."

In *Johnson, Admr.,* v. *Culver, Admx.* (1888), 116 Ind. 278, it was held not necessary that the acquaintance of non-expert witnesses with the person whose mental condition is in question should be extensive or intimate and that it is enough if the acquaintance has enabled the witness to form some opinion. The value of the opinion, will, of course, depend upon the facts on which it rests.

In *Ramseyer, Exr.,* v. *Dennis* (1917), 187 Ind. 420, 116 N. E. 417, 119 N. E. 719, an action to contest a will, the court states the rule to be "well settled that a non-expert witness may express his opinion as to the mental condition of the testator after detailing to the jury his personal knowledge of the testator, which may include the latter's gestures, his appearance and conduct; his

memory, his deportment, his conversations and declarations, his business dealings, and any other act of commission or omission considered by him in forming an opinion of the testator's mental condition. (Citing authorities.) . The court or jury. is thereby apprised of the reasons relied on by the witness to sustain his opinion, which go to the jury for whatever they are worth. The probative force of such narrated circumstances and opinions must necessarily depend upon how inseparably connected they are with the precise time of the making of the will."

In harmony with the foregoing authorities, we hold that each of these witnesses, after testifying so fully as to their acquaintance with Mrs. Kauffman, 3. their social and business relations with her, and observations of her, was competent to testify in answer to questions propounded to each of them that she was a person of sound mind at the time of the execution of the deed in controversy, and that it was prejudicial error to exclude such testimony.

Appellants propounded to one witness who had testified as to his acquaintance with Mrs. Kauffman the question as to whether he had ever noticed or 4. seen anything strange or unusual in her demeanor. To another, as to whether he had ever noticed any incoherency in her speech, and the further question as to whether he had observed any peculiarity in her manner that called his attention. There was an objection to each of the first two of these questions upon the ground that they called for a conclusion, and to the third there was no reason given for the objection. Appellant offered to prove that the witness would answer each of the questions in the negative. The objection in each instance was sustained. That such questions are competent has been many times decided.

In *Carthage Turnpike Co.* v. *Andrews* (1885), 102

Ind. 138, 52 Am. Rep. 653, the court, speaking with reference to similar questions, says: "If the witness states that he is acquainted with, has had opportunity to and has observed the party, this, it has been held, is sufficient to render the witness competent to state the condition of the party mentally or physically. The weight to be given to such evidence, of course, will depend upon the intelligence of the witness, the intimacy of his acquaintance with the party, and upon other things that may appear upon the examination in chief, and by a cross-examination." The court then cited with approval *Bennett* v. *Meehan* (1882), 83 Ind. 566, 43 Am. Rep. 78. That case quotes with approval from 1 Wharton, Evidence §512, as follows: "So an opinion can be given by a non-expert as to matters with which he is specially acquainted but which cannot be specifically described." The case of *Loshbaugh* v. *Birdsell* (1882), 90 Ind. 466, quotes with approval from Greenleaf on Evidence, as follows: "Non-experts may give their opinion on questions of identity, resemblance, apparent condition of body or mind, intoxication, insanity, sickness, health, value, conduct, and bearing, whether friendly or hostile, and the like." Many authorities are cited in the Carthage Turnpike case to sustain this contention, and it has been many times cited and followed. Among the cases so citing and following it are: *Stephenson* v. *State* (1887), 110 Ind. 365, 11 N. E. 360, 59 Am. Rep. 216; *Louisville, etc., R. Co.* v. *Donnegan* (1887), 111 Ind. 179, 12 N. E. 153; *Louisville, etc., R. Co.* v. *Miller* (1894), 141 Ind. 533, 553, 37 N. E. 343.

The wide scope which may be covered by such evidence is well expressed in 22 C. J. 614, as follows:

"Where the main ingredient in an inference as to the existence of a relevant mental state is the intuitive induction from observed appearances, it

is received, upon a statement by the witness of such constituent facts as he is able to detail. Thus a witness may be allowed to state that a person appeared to be, or impressed him as being, affectionate; that one was afraid, frightened, or scared; that a person was agitated, confused, excited, incoherent, nervous, or surprised." On page 600 of the same volume, the author says: "Witnesses have been allowed to state whether persons observed were, at times sufficiently near to be relevant, absent-minded; bright and quick; childish; easily impressed, or influenced; fickle; judicious; lacking in memory; normal; of average intelligence; rational or irrational; sensible; simple; stupid; uncertain; weak; weak-minded; or without memory." Many authorities are cited by the author to sustain his statements of the law, one of which is *In re Esterbrook* (1910), 83 Vt. 229, 75 Atl. 1. In that case, an action to contest a will, a witness was permitted, over objection and exception, to state that, on the occasion of the execution of the will, she noticed no peculiarities in the talk or actions of the testatrix, and, in connection with her other testimony, that she observed nothing peculiar in the testatrix, that is, nothing strange, unusual or unnatural, and it was held that such evidence was admissible. The rule is thus stated in Page, Wills §391: "In order to direct the mind of a witness who is being examined as to the conduct and behavior of testator, to the particular kind of conduct or behavior to be testified to, it is often necessary to characterize such conduct·as 'peculiar,' 'extraordinary,' and the like, and ask if such kind of conduct was observed. Such questions, if properly framed, are not objectionable as calling for an opinion. They are merely questions as to facts observed, and if they were not allowed, it would be practically impossible to get them before the jury without going over each occasion when witness saw testator in his whole

life." We are of the opinion, in view of such author-
ities as the foregoing, that it was error to refuse to
permit the questions here under discussion to be an-
swered.

Appellant Gwinn was not permitted to answer as to
what he did during the time that he lived on the farm
in controversy in reference to farming the same;
6-9. nor to answer as to what, in his judgment, it
was worth per week for board and to take care
of Mrs. Kauffman during the first five years that she
made her home with appellants; nor as to what it was
worth, after the first five years and up until the last
two years of her life, to take care of her; nor what his
services, including the services of his wife, on behalf
of Mrs. Kauffman, were worth during the last two years
of her life. The same witness was not permitted to
answer the following question concerning the time when
Mrs. Kauffman lived in the home of appellants. "Dur-
ing that time if you saw your wife performing any
services for her (Mrs. Kauffman) you may state what
she did, what you saw her do?" To each of these ques-
tions, appellees interposed an objection that such ques-
tions and answers did not tend to prove or disprove
any issue in the cause. The examination of appellant
James M. Gwinn concerning occurrences before the
death of Mrs. Kauffman had been taken out of court
by appellees and the examination read in evidence at the
trial, and there was, therefore, no question as to his
competency to testify. It is appellants' contention that
Mrs. Kauffman was of sound mind, and that, even
though she was a person of unsound mind at the time
she executed the deed, there is no evidence that appel-
lants had any knowledge of such condition of her mind,
that there was no evidence of undue influence of Mrs.
Kauffman on the part of appellants, that, therefore,
there could be no rescission until they had been placed

in *statu quo*, or that an offer had been made by appellees to so place them, and that they were entitled to such evidence for the purpose of sustaining their theory. Appellees say that it was decided on the former appeal of this cause, and is now the law of this case, that the disaffirmance was effectual, and that appellees had the right to sue at law for the recovery of their interest in the land, and they quote to sustain their contention from the former opinion as follows: "There was evidence from which the jury might have found that no consideration was paid therefor, or that the deed was executed under such circumstances that the grantee was not entitled to be placed in *statu quo*. In either of these events the suggested proof was not required. Viewing the evidence in the light of the imperative rule stated, we cannot say that the court erred in refusing to give the peremptory instruction requested." It will be observed that the foregoing quotation from the former opinion pertained to the refusal of the trial court to give a peremptory instruction which had been tendered by appellants. Appellees say that the evidence upon the last trial was the same as on the former trial, but this court cannot accept this conclusion of appellees and base its ruling upon such statement or conclusion as to the law of the case. Conceding that the jury in the former case might have found that no consideration was paid for the deed, or that the deed was executed under circumstances that would entitle appellees to recover without putting appellants in *statu quo*, such finding of fact by a former jury could not bind a jury at a subsequent hearing. It is the law of the case that must remain the same and not necessarily the finding of facts by the jury. We hold that appellants were entitled to present this theory of their defense to the jury. The question then that we have to determine is as to whether the questions propounded by ap-

pellants were within the issues to be tried. We must determine what was the real consideration for the deed and as to whether such consideration had been paid or performed; for it is a well-established rule that where a contract has been entered into with an insane person, in good faith, without fraud or imposition, for a fair consideration, without notice of insanity and before an adjudication of insanity, and has been executed, in whole or in part, the contract will not be set aside unless the parties can be restored to their original position. *Fay* v. *Burditt* (1882), 81 Ind. 433, 42 Am. Rep. 142; *Northwestern, etc., Ins. Co.* v. *Blankenship* (1883), 94 Ind. 535, 48 Am. Rep. 185.

There is some discussion and disagreement between the parties hereto as to what constituted the consideration for the deed here involved, but we have no difficulty in determining, and we so hold, that the contract executed contemporaneously with the deed and the terms and stipulations therein contained constituted the real consideration for the execution of the deed. Appellees argue in their prefatory statement that the deed in question and the lease drawn on the same day were not interdependent, that while the parties were the same, the consideration and the subject-matter of each was entirely distinct. But, at another place in their brief, they argue: "If the deed stood alone perhaps it might be shown by parol, that there were other considerations, but it is accompanied by a written contract, in which the consideration is stated specifically and contractually and where so stated all oral agreements are merged and evidence of them is excluded." If we interpret this statement correctly, it practically says that the deed and the contemporaneous contract must be construed together and that the contract and its provisions constitute the consideration for the deed. That such contemporaneous instru-

ments will be construed together is the general rule of law has been many times decided. *Price* v. *Hart* (1922), 77 Ind. App. 653, 134 N. E. 672; *Southern Finance Company* v. *Mercantile Dis. Corp.* (1923), 80 Ind. App. 436, 141 N. E. 250; *Knepper* v. *Eggiman* (1912), 177 Ind. 56.

It will be observed that the contract provided a consideration, in addition to $260 per year for the real estate, that Mrs. Kauffman should have a home with appellants and her board free during the time of the existence of the lease, she to pay all her other expenses including the doctor bills and funeral expenses. The meaning of the word *home*, as used in such contracts, is of varied meaning and sometimes difficult of determination. It is generally safe to construe its meaning according to the particular construction given by the parties in their relations to each other in carrying out the terms of the contract, and of the existing circumstances surrounding them. *Day* v. *Towns* (1910), 76 N. H. 200, 81 Atl. 405, 406; *Stiles* v. *Cummings* (1905), 122 Ga. 635, 50 S. E. 484, 486. It appears by the undisputed facts in this case that Mrs. Kauffman was left alone at the death of her husband upon the 130-acre farm here in controversy, that appellee Robinson and her husband moved in with her for the purpose of caring for her and of working the farm, and remained for about one year, when they moved away and Mrs. Kauffman was left alone; that she then tried to induce the other appellees to live with her but failed in her efforts. She was also unable for a while to induce appellants to move to her farm and furnish her a home, and, that she might bring influence to bear upon them so to do, she sent a third party to persuade them to that end. We may here say that this evidence, together with all of the evidence produced at the trial, fails to show that there was any undue

influence brought to bear on Mrs. Kauffman upon the part of appellants or anyone in their behalf to induce her to enter into the deed and contract here involved, nor is there evidence, so far as we have been able to find, that appellants had any knowledge whatever of the alleged unsoundness of mind of Mrs. Kauffman. About fifty disinterested witnesses, her neighbors and friends, persons who had transacted business with her, some of them borrowing money from her and executing notes to her, and paying interest to her, after testifying fully as to their acquaintance with her and their relations and associations with her, testified that in their opinion she was a person of sound mind; while only those witnesses who are appellees in this action testified, after what seems to us meagre evidence of any facts upon which they might base their opinions as to her sanity or insanity, that she was a person of unsound mind. This, of course, constituted some evidence, and, under the well-established rule, this court will not weigh the evidence, yet certainly it cannot be inferred from such evidence, in the absence of any evidence of knowledge upon the part of appellants that Mrs. Kauffman was of unsound mind, that they had any knowledge of such alleged fact, and, in the absence of such knowledge, and in the absence of undue influence, and having joined in the execution of the deed and contract in good faith and fully performed the consideration therein, there could be no rescission of the deed until appellants were placed in *statu quo*. *Studabaker* v. *Faylor* (1908), 170 Ind. 498, 127 Am. St. 397.

What was embraced in the home that under the contract was furnished by appellants to Mrs. Kauffman?

It appears by the undisputed evidence that appellants, with their family of children, moved to the farm of Mrs. Kauffman and that they remained there taking care of her for about eleven years,

and until the time of her death. At the time they moved into the home, she was well and able to get around and occupy the home together with appellants as a member of the family. When she was well and able so to do, she participated in a measure in performing the duties of the home. In the course of four or five years, she had reached a condition of ill health which required great care on the part of appellants, and especially on the part of appellant Mrs. Gwinn, which service was freely rendered by her and accepted by Mrs. Kauffman. So much was she pleased with the treatment she received at the hands of Mrs. Gwinn, that she stated to appellees that they must be good to Stella (Mrs. Gwinn) for she had been good to her. For the last three or four years of her life, appellants carried the food to her when she was confined to her room on the second floor of the house, and cared for her physical necessities and nursed her as a mother would a child. It is apparent from all of the evidence in the case as to their relations each to the other in the home that Mrs. Kauffman lived therein as one of the family, rendering only such services as she chose to render in performing the household duties, and that she was freely given, and that she received at the hands of appellants, the most tender care. By their treatment each of the other and by their manner of conducting the home, they have put a construction upon the meaning of that word that must control in this case. It included not only a place of abode and shelter, but as well all of that care which one member of a family may render to another, whether in sickness or in health. In this case, it included such services as were rendered by appellants for Mrs. Kauffman in ministering to her necessities and making her comfortable in her declining years. With such construction on the meaning of the word, we hold that it was entirely proper, if the

deed under which, along with the contract, appellants furnished the home to Mrs. Kauffman was to be rescinded, that they be given a right to show the value of the services which they had rendered in the performance of its consideration so construed; they had a right to recover such value; and there could be no rescission of the deed in controversy until compensation for services rendered had been made or offered. Mrs. Kauffman had died and appellants had faithfully kept the contract into which they had entered, which with its consideration furnished the consideration for the deed. It was a consideration performed, an executed contract fairly entered into, and as such, before there could be a rescission, appellants were entitled to be placed in *statu quo,* and to this end, it was proper for them to show the character and value of the services which they had rendered under the terms of the contract, and as to whether there had been any offer to compensate them therefor.

Appellants complain of instruction No. 4 tendered by appellees and given by the court. This instruction undertakes to instruct the jury as to the mental capacity required in order to make an advancement. Appellants complain of such instruction because it did not advise the jury that it must first find that the grantor was intending to make an advancement to an expectant heir. But it was not the province of the jury to make this finding. Whether there was any intention to make an advancement must be determined by the construction of the contract here involved, and the construction of such written instrument is for the court. The instruction concludes with the statement: "And if you find from the evidence that said Sarah Kauffman did not have the mental capacity as above described, then I instruct you that said deed is voidable on the ground of mental capacity." Evidently the

court intended to say "on the ground of mental inca-
pacity," and no doubt the jury so understood.  But,
conceding without deciding that Mrs. Kauffman did not
have the mental capacity to make any advancement to
appellants, still it is true that a part at least of the
consideration for the deed was contractual and, in the
absence of undue influence or knowledge upon the part
of appellants that Mrs. Kauffman was of unsound mind,
the deed was not voidable until there was an offer to
place appellants in *statu quo*.   Appellants tendered in-
structions upon this theory of the case, each of which
was refused by the court.   The failure of the court to
instruct the jury as to this requirement in order to void
the deed, either in this instruction or some other proper
instruction, tendered by appellants, was error.   They
had a right to have their theory in this regard stated
to the jury.

Instruction No. 5 tendered by appellee and given is
as follows:   "Also, to make a valid deed and contract
for home and board during life and a lease or
demise of lands during life and in fee after death,
and as an advancement to the grantee, the lessor
making the deed and contract should have sufficient
mental capacity to understand the nature of such a
contract and lease, to know the reasonable value of her
lands and rental value, the reasonable worth of her
home and board contracted for, the probable duration
of her life and any other matters affecting the fair-
ness of the transaction and to retain these matters in
her mind long enough to have the deed and contract
drawn and rationally executed."   Such instruction
could be good only upon the theory that the deed and
contract were to be construed together.   This does not
seem to be the theory upon which the case was tried.
In the absence of such theory, and, unless the validity
of the contract along with the deed was in issue, it

was error to instruct the jury as to the mental capacity required to make the contract. This instruction informs the jury as to the mental capacity required by the grantor in order to make a valid deed and contract by saying that she should be able to understand the nature of such contract and lease, to know the reasonable value of her lands and rental value, the reasonable worth of her home and board contracted for, the probable duration of her life, and any other matters affecting the fairness of the transaction. We hardly need to say that the jury was permitted to consider only such matters affecting the fairness of the transaction as appeared by the evidence.

We find no substantial error in instruction No. 6 tendered by appellees and given by the court.

Instruction No. 10 informed the jury that if it should find that Sarah Kauffman had no descendants other than appellees Anna C. Hobbs, Alta Robinson, Sarah Sowerwine and appellant James M. Gwinn, who were her grandchildren, and that they were the natural objects of their grandmother's bounty and equally deserving thereof, and that, up to that time, she had held them in equal esteem and had not favored one over another by way of advancements or otherwise, and that the effect of the deed and contract was to give to appellant James M. Gwinn a much larger share by way of advancements out of her estate than she could reasonably expect each of her granddaughters to receive at her death, or much larger than she could reasonably expect to bestow upon them in her lifetime, such discrimination might be considered as corroborating the claim that Mrs. Kauffman was not of sound mind or that the deed was obtained by undue influence. We would not reverse the judgment because of errors in this instruction had a right result been reached, yet we think it is subject to criticism and that it should

not have been given in the form in which it appears. After calling the jury's attention to the fact that the contesting parties were descendants of Sarah Kauffman, it leaves it to the jury to find whether they were the natural objects of their grandmother's bounty without defining to the jury the meaning of that term. That such term has a well-defined meaning in law see *Breadheft* v. *Cleveland* (1915), 184 Ind. 130, 138, 108 N. E. 5, 110 N. E. 662. The jury should have been instructed as to the meaning of the term so used. The jury should not have been instructed that "it might consider such discrimination in favor of her grandson as corroborating the claim that the said Sarah Kauffman was of unsound mind," etc., but rather to the effect, as expressed in *Breadheft* v. *Cleveland, supra,* that it might consider such fact involving unnatural conduct in connection with other evidence in determining Mrs. Kauffman's sanity.

Appellants challenge instructions Nos. 11 and 12 tendered by appellee and given, and instructions Nos. 10 and 11 given by the court on its own motion. 17, 18. These instructions inform the jury, in effect, that there is an issue of undue influence in the cause. Appellees say that appellants have waived their objection to these instructions upon the ground that there was no evidence of undue influence by tendering certain instructions on that question. But such instructions so tendered by appellants were after the court had refused to give a peremptory instruction withdrawing the issue of undue influence from the jury. Since the court had determined to instruct on that issue, appellants did not waive their objections to instructions given by tendering instructions expressing, in their opinion, the correct doctrine of undue influence. If there is any evidence, either direct or circumstantial, in this case of undue influence upon Mrs. Kauffman

inducing the execution of the contract and deed in controversy, we fail to find it, and appellees have failed to point it out. That undue influence must be something more than a mere shadow, see *Wiley* v. *Gordon* (1914), 181 Ind. 252, 266, 104 N. E. 500. In the absence of such evidence, it was error to give instructions submitting such issue to the jury. *Long, Exr.,* v. *Neal* (1921), 191 Ind. 118, 132 N. E. 252.

Instruction No. 12 given by the court on its own motion was a correct statement of the law so far as it went.

Without separately and specifically considering each of the instructions tendered by appellants and refused by the court, and which undertook to instruct the jury upon the question of appellant's rights to be placed in *statu quo,* we hold that it was error for the court, when proper instructions were tendered to refuse to instruct the jury upon this issue. *Studabaker* v. *Faylor, supra.*

We have yet to determine as to the question of the delivery of the deed. It appears in such instrument that there was reserved therein to the grantor a life estate. This court held in *McColley* v. *Binkley* (1919), 69 Ind. App. 352, 121 N. E. 847, that reserving a life estate in the grantor creates a presumption that the deed was intended to take effect immediately as a conveyance of an estate, citing *Buck* v. *Garber* (1913), 261 Ill. 378, 103 N. E. 1059. In that case, it was held that the retention of the deed by the grantors is not inconsistent with its delivery at the time of the execution when a life estate in the property conveyed is reserved by the grantor. In *Carver* v. *Carver* (1884), 97 Ind. 497, the court held that the certificate of acknowledgment of a deed in proper form makes a *prima facie* case in favor of the execution of the instrument. In the instant case, the only evidence as to the delivery of the deed other than the presump-

tions from the instrument itself as above set out, was that of appellant James M. Gwinn, and he testified to the delivery of the deed to him. There is no evidence which in any way overcomes the presumption in favor of delivery, and the evidence thereof. We hold that the deed was delivered.

The judgment is reversed with instructions to the trial court to grant a new trial.

### DISSENTING OPINION.

REMY, C. J.—I cannot concur in the decision reached by a majority of this court. Some of the questions decided are questions which were, or might have been, decided on the former appeal, and, as I believe, were improperly considered. *Stevens* v. *Templeton* (1910), 174 Ind. 129, 91 N. E. 563. Even if the case would have to be reversed because of any error, I could not concur in the opinion, for, in my judgment, wrong conclusions are reached on certain questions, which conclusions would be prejudicial to appellees on a retrial. It is not my purpose to write a dissenting opinion, giving my views on all the questions involved, and which I believe are erroneously decided in the prevailing opinion. I shall discuss briefly one question. In my opinion, there is some evidence of undue influence. The deed and lease were executed on the same day in a law office in the city of Noblesville, and in the presence of appellant James M. Gwinn who took Mrs. Kauffman to the office. Mrs. Kauffman who executed the deed and lease, and the lawyer who drew the instruments, both died before the commencement of this action. There is no consideration stated in the deed except one dollar and love and affection. All the terms of the lease are favorable to Gwinn. Not only is the rental charge small, but special provision is made that all repairs of buildings and fences were to be paid for by Mrs.

Kauffman, and she was to pay all bills for physicians and nurses, and her funeral expenses were to be paid out of her estate. The lease contract also provides that if Gwinn should die before Mrs. Kauffman, the lease should terminate "without in any way affecting the deed." In other words, the lease was so drawn that if Gwinn had died the next week after its execution, his heirs would have gotten the fee of a farm worth many thousands of dollars for a nominal consideration, and Mrs. Kauffman would have been compelled to look elsewhere for a "home." Then, too, the secrecy of the transaction is a strong circumstance. Secrecy is a badge of fraud. Gwinn did not take possession of the deed and place it of record. The whole matter was kept from the other heirs of Mrs. Kauffman. The record shows that Gwinn stated in a preliminary examination taken before the first trial that he first told Mrs. Kauffman not to have the deed recorded. The fact that he later changed his testimony only makes it the worse for him. The jury had a right to believe his first statement which was introduced on the last trial. Circumstances are usually the strongest evidence in proving undue influence, or any species of fraud. Circumstances do not lie. Interested witnesses may, and sometimes do, give false testimony. The terms of the deed and lease show that the transaction was unfair and unjust. I think the circumstances in this case, which include the deed and lease, inadequacy of consideration, the ages and relationship of the parties, the conduct of Gwinn and the secrecy of the transaction, coupled with the testimony of Gwinn that he told Mrs. Kauffman not to have the deed recorded, amount to some evidence of undue influence.

It has been held that stronger proof is required to establish undue influence in case of a will than of a

deed or contract. *Shipman* v. *Furniss* (1881), 69 Ala. 555, 44 Am. Rep. 528.

It seems to me that if the courts are to hold that the terms of an unfair contract, coupled with the circumstances surrounding the transaction, tending, as they do in this case, to show fraud, are to be treated as no evidence, then judicial decisions open the way for shrewd and dishonest individuals so to cover their work that they cannot be reached by the law. It may be that Gwinn was guilty of no fraud in procuring the deed and lease, but whether he was or not, was, under the evidence and under our system of jurisprudence, a question for the jury, subject to a review by the trial court on motion for a new trial. Three juries have said that Gwinn was guilty of fraud, and three trial judges who saw and heard the witnesses overruled motions for a new trial. From the extended discussion of the evidence in the prevailing opinion, particularly the evidence most favorable to appellants, I have a conviction that there has been a weighing of the evidence. This court, in ruling on an objection to the sufficiency of the evidence, should consider only the evidence most favorable to the appellee. *Vandalia Coal Co.* v. *Coakley* (1916), 184 Ind. 661, 111 N. E. 426. As was stated by this court in a well-considered opinion written by Nichols, J.: "If there is any evidence as to a disputed fact, though it be circumstantial, such evidence must prevail." *Duguid* v. *Coldsnow* (1921), 76 Ind. App. 545, 132 N. E. 659. I regret that I find myself unable to agree with my associates.

### DISSENTING OPINION.

DAUSMAN, P. J.—I concur in part and dissent in part. It appears that the plaintiffs below (the appellees here) are grandchildren of one Sarah Kauffman, deceased; and that they claim to own the land described in their

complaint through inheritance from their mother. If their mother died intestate and was the owner of the land at the time of her death, and if the land descended to them as her children, by virtue of the statute of descents, then the title which they thus inherited is a legal title. They instituted a simple statutory action to quiet their alleged legal title against the defendant James M. Gwinn (the appellant here) on the ground that he claimed title adversely to them and that his claim is without right and unfounded and a cloud upon their title. At the trial, the plaintiffs introduced a deed executed by Sarah Kauffman to James M. Gwinn, conveying the real estate described in the complaint. Then they sought to destroy that deed by proving that it was obtained by fraud. To me it is clear that when the plaintiffs introduced that deed, they thereby established a *prima facie* title in the defendant and destroyed their own alleged cause of action by showing that their ancestor did not own the land at the time of her death. The plaintiffs know that so long as the deed stands, they cannot recover. The thing they are actually seeking, therefore, is a cancellation of the deed. Whether or not the deed shall be canceled is a question which cannot be tried by jury and determined by their verdict. The statutory form of complaint to quiet title may not be used to conceal the plaintiffs' real purpose which is to cancel a deed for fraud.

The plaintiffs also adduced in evidence a written contract made by and between the defendant and Sarah Kauffman at the time the deed was executed, which relates to the consideration for the deed. If the deed should be canceled, then the liability of the deceased and the rights of the defendant arising out of that contract must be ascertained and adjusted. It is clear to me that in this case justice cannot be done by a jury. The case is one exclusively for the court.

I agree that the judgment should be reversed, but I insist that the trial court should be directed to dismiss the action. This should be done regardless of what was said by this court in the former appeal. I am of the opinion that the cases cited in the opinion in the former appeal do not sustain the proposition that there may be a cancellation of the written instruments and an adjustment of the rights of the parties in a statutory action to quiet title.